

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | | |
|---|---|---|---|
| IN THE MATTER OF | : | MISCELLANEOUS | *FILED* |
| | : | | |
| MICHAEL ELIAS STOSIC | : | No. 16-190 | *JAN 3 0 2017* |
| | : | | |

KATE BARKMAN, Clerk
By ____ Dep. Clerk

Padova, Diamond, and Sánchez, JJ.                                    January 30, 2017

## REPORT AND RECOMMENDATION

On September 14, 2016, the Pennsylvania Supreme Court suspended Respondent Michael Elias Stosic for a year and a day because of his repeated failures to represent his clients diligently. While suspended in Pennsylvania, Stosic tried a criminal case before Judge Bartle without informing his client, the prosecutor, or the Court of his Pennsylvania suspension or that his reciprocal suspension would take effect here in less than a week. Moreover, it became apparent during the hearing before us that Stosic misrepresented to the Pennsylvania Disciplinary Board and to us that he had complied with state law notice obligations respecting his suspension. Stosic does not contest the imposition of reciprocal discipline for his lack of diligence. His conduct before Judge Bartle and us, as well as his misrepresentations to the Board, however, compel us to recommend Stosic's disbarment.

## I. Background

A. *Commonwealth Disciplinary Proceeding*

Pennsylvania suspended Stosic for his lack of diligence in nine separate matters. (See Doc. No. 1.; Office of Disciplinary Counsel v. Stosic, No. 65 DB 2015, Rpt. & Rec., FOFs, ¶¶ 4-21 (Jun. 23, 2016) (Stosic never visited his client in prison and kept the client's retainer after his disqualification); id. ¶¶ 22-48 (although Stosic had received client funds to hire a construction expert, he did not do so, and failed to appear at the arbitration proceeding); id.

¶¶ 67-77 (Stosic did not file divorce complaint until seven months after receiving his fee); id. ¶¶ 95-114 (client's complaint was dismissed as a sanction for Stosic's failure to provide interrogatories and discovery responses; Stosic also failed to file a timely notice of appeal).)

Pennsylvania similarly found that Stosic had failed to communicate adequately with his clients regarding the status of their cases. (Id. ¶¶ 49-66 (Stosic repeatedly failed to return client's phone calls, and refused to forward the client's file and money owed when the client obtained new counsel); id. ¶¶ 67-77 (Stosic failed to respond to his client because he was "overwhelmed by the demands" of opening his newly purchased bar).)

Pennsylvania also found that Stosic had repeatedly and impermissibly missed court appearances. (Id. ¶¶ 78-82 (Stosic held in contempt for his failure to appear without excuse at three prior listings on behalf of a juvenile client in custody); id. ¶¶ 83-86 (Stosic held in contempt because he was tardy); id. ¶¶ 87-94 (Stosic held in contempt in criminal matter because he "was in Mexico at the time of the hearing").)

Finally, Pennsylvania found that Stosic had falsely represented that he carried malpractice insurance. (Id. ¶ 114-115 (client unable to collect malpractice judgment because Stosic had no insurance); id. ¶¶ 116-119 (Stosic falsely informed the Disciplinary Board that he carried insurance).)

The Board noted that Stosic "displayed no remorse for his conduct," and "blamed his clients for the problems that brought him into the disciplinary system." (Id. ¶ 120.) The Board determined that Stosic had violated numerous Rules of Professional Conduct and Disciplinary Enforcement. (Id., Conclusions of Law, ¶¶ 1-9.); Pa. R.P.C. 1.1 (competence); Pa. R.P.C. 1.3 (diligence); Pa. R.P.C. 1.4(a)(3) (duty to keep client "reasonably informed"); Pa. R.P.C 1.4(a)(4) (duty to "promptly comply" with clients' requests for information);   Pa. R.P.C. 8.4(c)

(prohibiting dishonesty or fraud); Pa. R.P.C. 8.4(d) (prohibiting conduct "prejudicial to the administration of justice"); Pa. R.D.E. 203(b)(1) (conviction of crime is grounds for discipline); Pa. R.D.E. 203(b)(3) (willful violation of Enforcement Rules is grounds for discipline). The Pennsylvania Supreme Court adopted the Board's recommended suspension, which became effective thirty days later, on October 14, 2016. (Doc. No. 1); Pa. R.D.E. 217(d)(1).

B.  *Criminal Proceeding Before Judge Bartle*

On September 21, 2016—one week after the Supreme Court adopted the Board's recommendation—Chief Judge Tucker ordered Stosic to show cause why this Court should not impose reciprocal discipline in 30 days. (Doc. No. 2.) Because Stosic did not contest reciprocal discipline, this Court's suspension would take effect on October 21, 2016. Stosic nonetheless represented Jose Sanchez during his drug trial, which took place on October 14, 17, and 18, 2016. (See United States v. Sanchez, Crim. No. 15-281, Doc. Nos. 1, 10); 21 U.S.C. §§ 841, 843, 846. Because the jury convicted Sanchez of all charges, he faced a maximum sentence of 30 years' incarceration on each of six conspiracy counts. Stosic had never informed Judge Bartle, Sanchez, or opposing counsel of his Pennsylvania discipline or his imminent Eastern District suspension. (Sanchez, Doc. No. 56, at 3; id., 10/24/16 Hr'g Tr., Doc. No. 54, at 8:14-16.)

After learning of Stosic's suspension, Judge Bartle conducted an evidentiary hearing on October 24, during which Stosic admitted that he had not informed Sanchez of his suspension, explaining as follows: "Well, Your Honor, I [had] not been suspended yet by the Federal Court." (10/24/16 Hr'g Tr. at 5:3-6.) Indeed, Stosic acknowledged that he had just learned during the October 24 hearing itself that his client knew of his suspension: "Mr. Sanchez just indicated to me, said he was aware of my suspension." (Id. at 5:1-2.)

On October 27, Judge Bartle granted Sanchez a new trial because Stosic's "failure to tell his client and [the Court] of his impaired professional status constitute[d] a flagrant lack of candor about a material fact." (Sanchez, Doc. No. 56, at 4.)  Judge Bartle explained that Stosic's misconduct was especially "flagrant" given the very serious charges Sanchez faced and "Stosic's past deficiencies as a practicing lawyer." (Id. at 4.)  On January 11, 2017, Sanchez, represented by new counsel, pled guilty pursuant to a written guilty plea agreement. (Sanchez, Doc. Nos. 91, 93.)

   C. *The Instant Disciplinary Proceeding*

On October 27, 2016, Chief Judge Tucker ordered the undersigned panel to determine "whether discipline should be imposed upon [Stosic], and if so, to what degree" because Stosic had represented a criminal defendant in this Court while under state suspension. (Doc. No. 3.) Stosic responded to that Order on November 1, 2016. (Doc. No. 4.)  Although he conceded the imposition of reciprocal discipline—suspension for a year and a day—he opposed the imposition of more severe discipline for his misconduct in Sanchez.  He wrote, *inter alia*, that he "wasn't trying to hide anything." (Id. ¶ 21.)  Rather, he stated that Judge Bartle should have been aware of Stosic's imminent suspension. (Id. ¶ 23 ("There is no rule that I must tell every Judge in Every Court [of his suspension].").)  Stosic reiterated that he was not obligated to disclose a suspension that had not yet taken effect:

> I was not suspended during the trial.  I was a licensed attorney.  I have done a thousand drug trials and this Disciplinary Matter does not in any way involve my ability to do a Drug Trial.

(Id. at p. 4 (emphasis in original).)

In accordance with Judge Tucker's Order, we conducted a hearing on November 10, 2016 to determine whether Stosic's behavior before Judge Bartle warranted the imposition of more severe discipline. (See Doc. No. 6.)

Stosic—who represented himself—again sought to justify his behavior. Stosic's testimony was confusing and largely incredible; his demeanor and affect were disrespectful and inappropriate.

Stosic repeated that he "was not trying to hide anything" from Judge Bartle and that he had mistakenly "made an inference" that Judge Bartle knew of his suspension. (Hr'g Tr., Doc. No. 9, at 18:21-24, 19:20-23.)

By the time of the November 10 hearing, Stosic significantly changed his explanation as to why he never informed Sanchez of his suspension. As we have discussed, during the October 24, 2016 hearing before Judge Bartle (and in his November 1 response to Chief Judge Tucker's show cause Order), Stosic stated that he did not tell Sanchez of his suspension because at the time of trial, Stosic "was [still] a licensed attorney." (Doc. No. 4, p. 4; see 10/24/16 Hr'g Tr. at 5:3-6, 13:24-25; 14:3-4.) He also told Judge Bartle that he learned for the first time during the October 24 proceeding itself that Sanchez knew of Stosic's suspension. Before us, however, Stosic testified that well before trial, he had discussed his suspension with Sanchez:

> **Stosic**: [A]s to my client, Mr. Sanchez, I went to visit him in prison. He said I heard you were getting suspended. He almost had like a chuckle. I said yes, I am. He – I said, you know – and he just like – we kind of just said eh, whatever, whatever, and we – I continued to talk to him and we went over his case.

(Hr'g Tr. at 12:4-10; see also id. at 15:16-18 ("I will take a lie detector right now that Mr. Sanchez was aware . . . [that] I was being suspended."); id. at 55:11-13 ("I will bow before the Court. I swear I – [Jose] Sanchez was 1,000 percent aware of everything.").) We discredit this belated, highly dubious account.

As we have discussed, Sanchez's trial began on October 14, 2016—the day his Pennsylvania suspension took effect—and concluded on October 18, 2016.   This Court's suspension of Stosic became effective three days later, on October 21.  Stosic acknowledged that he had not considered how to protect his client if Sanchez's trial had gone on past October 20.

> **The Court:** What if this case had to be continued so that it resumed after your suspension took effect? What would you have done?
> **Stosic:** What would I have done? I would have informed the court that I was suspended or I would have –
> **The Court:** So that's after a trial began, after the jury was impaneled, after jeopardy attached, you would have said I'm no longer licensed to practice law; I can't continue the trial.
> **Stosic:** What I would honestly have done is I would have sent a letter to the president judge.

(Hr'g Tr. at 51:19-52:6.)

### D. *Misrepresentations to Pennsylvania Authorities*

During the November 10 hearing it became apparent that Stosic had falsely certified to the Disciplinary Board that he had complied with Pennsylvania's suspension notice requirements.  In ordering Stosic's suspension, the Pennsylvania Supreme Court also ordered him to comply with Pennsylvania Disciplinary Enforcement Rule 217(b), which requires a suspended attorney to "promptly notify . . . all clients who are involved in the pending litigation . . . and the attorney or attorneys for each adverse party in such matter or proceeding" of the suspension in a manner that provides "proof of receipt."  (Doc. No. 1.)  The notice to the client "shall advise the prompt substitution of another attorney," and, if the client does not obtain substitute counsel before the attorney's suspension begins, "it shall be the responsibility of the formerly admitted attorney to move . . . for leave to withdraw."  Pa. R.D.E. 217(b).

Rule 217(e) further requires a suspended attorney, within ten days of his suspension, to "file with the Secretary of the [Pennsylvania Disciplinary] Board a verified statement" providing,

*inter alia*, that "the provisions of the order and [the Disciplinary Rules] have been fully complied with" and that he "has attached copies of the notices" delivered to clients and to opposing counsel regarding his pending suspension.  Pa. R.D.E. 217(e); <u>see</u> <u>id.</u> 217(b) ("[T]he formerly admitted attorney shall file copies of the notices required by this subdivision and proofs of receipt" with the Board).

On October 25, 2016, Stosic filed with the Board his Statement of Compliance, attaching a spreadsheet setting out some 30 matters, and averred that he had "fully complied with the applicable provisions of Pa. R.D.E. 217 by notifying all clients being represented[,] the attorneys for each adverse party in pending litigation[,] and all other tribunals" of his suspension.  He further averred that he was "attaching copies of the notices and proofs of receipt to all those so notified in accordance with Rule 217(a), (b), and (c)."  Finally, Stosic provided the Board with a draft letter to clients describing his suspension, and a list of the clients to whom he had sent the letter.

We learned during the November 10 hearing that virtually no part of Stosic's certification was true.  He failed to provide written notice to his clients by a method allowing for "proof of receipt."  Rather, he purportedly told his clients of his suspension.  (Hr'g Tr. at 13:16-23, 23:9-11; <u>see also</u> <u>id.</u> at 13:12-14 ("[T]here's probably ten to 15 clients who I didn't send a certified letter to.").)  He admitted that he did not notify opposing counsel that he had been suspended.  (Hr'g Tr. at 26:24-27:1 ("Q. Did you notify opposing counsel in every case? A. No.").)  He admitted that he did not inform the <u>Sanchez</u> prosecutor of his suspension.  (Hr'g Tr. at 22:1-2 ("I thought [Rule 217] was a state level rule.").)  Indeed, his Rule 217 certification notwithstanding, he feigned ignorance of its notice requirements.  (Hr'g Tr. at 29:4-6 ("Q. The rule required you to notify opposing counsel.  You didn't do it, correct? A. Again, define

notify.").)  Moreover, Stosic admitted that he had not moved to withdraw in every case in which

he was counsel of record, even though his suspension had already commenced:

> **The Court**: The letter said . . . 'It is my responsibility to move in the court, . . . or agency in which the proceeding is pending for leave to withdraw.' Did you do that? In any of these cases did you move for leave to withdraw?
> **Stosic**: At this point, no.

(Hr'g Tr. at 45:1-9.)

　　　We do not believe that Stosic ever notified any opposing counsel of his suspension.

Stosic testified that the majority of the matters in his spreadsheet were state court criminal cases

without an assigned assistant district attorney.  (Hr'g Tr. at 32:11-14, 34:19-20, 34:24-35:5,

35:8-16, 38:7-9, 39:4-11, 39:14-41:2, 41:22-42:5.)  Stosic testified that he had notified a

supervising prosecutor of his suspension by telephone, but was unable to identify this individual:

> **The Court:** Who was the supervisor you discussed your suspension with? What was his or her name?
> **Stosic:** I don't remember and I'm not going to.
> **The Court:** You don't remember?
> **Stosic**: No, I don't remember because I didn't think I'd be standing before a panel in federal court.

(Hr'g Tr. at 37:3-11; id. at 33:3-6.)

　　　The remaining cases listed in Stosic's Rule 217 certification were foreclosure matters.

Although Stosic told us that he had spoken by telephone to opposing counsel in those matters, he

once again was unable to identify them.  (Hr'g Tr. at 42:16-43:9.)  Indeed, Stosic admitted that

he did not "remember the name of any lawyer at all . . . to whom [Stosic] spoke and told him or

her that [Stosic] had been suspended."  (Hr'g Tr. at 43:15-20.)

　　　Finally, Stosic admitted to us that he had never even read Rule 217.  (Hr'g Tr. at

27:19-20 ("No, I didn't read Rule 217, no.").)

Because Stosic's failure to comply with Rule 217 first became apparent during the hearing before us, we offered to hold a second hearing at which he could present additional evidence and be heard on his Rule 217 compliance.  (Doc. No. 8.)  Stosic did not respond to that Order.  Thus, even though Stosic told us that he "actually sent . . . letters . . . to everybody in the [certification] spreadsheet," and that he could "get the U.S. Postal Service Receipts" evidencing those letters, he never did so.  (Hr'g Tr. at 44:15-19.)

In sum, we discredit Stosic's inconsistent, confusing testimony that he had complied with any of his Rule 217 obligations.  On the contrary, we find that he falsely swore to the Disciplinary Board that he had complied with the Rule.

E.  *Conduct Before Us*

Throughout the November 10 hearing, Stosic's demeanor was flippant, smug, and otherwise inappropriate.  He obfuscated, talked over us, made mock-obsequious vows of truthfulness, and volunteered to take lie detector tests.  (Hr'g Tr. at 15:16-18, 18:25-19:4, 62:14-20, 64:4-17.)  He repeatedly complained that he was going to "get in trouble," and accused us of "want[ing] [him] to get in more trouble." (Hr'g Tr. at 17:1-6, 49:18-19, 55:1-2; see also id. at 50:7-8 ("I know the outcome of this, all right.").)  When we explained to Stosic our post-hearing procedure—i.e., his right to object to the report and recommendation—he responded "Yeah, I mean it's whatever."  (Hr'g Tr. at 63:17.)

## II.  Legal Standards

Chief Judge Tucker initially ordered Stosic to show cause as to why a reciprocal one-year and one-day suspension should not be imposed pursuant to Local Rule 83.6(II)(D).  (Doc. No. 2.)  Local Rule 83.6(II)(D) provides in relevant part:

> [T]his Court shall impose the identical discipline or prohibition unless the respondent-attorney demonstrates, or this court finds, that upon the face of the

record upon which the discipline or prohibition in another jurisdiction is predicated it clearly appears: . . . that the misconduct or other basis established for the discipline or prohibition is deemed by this court to warrant substantially different action.

If the Court determines that the respondent's misconduct warrants substantially different action, it may "enter such other order as it deems appropriate." Id.

Under Local Rule 83.6(IV)(A), this Court may also impose discipline "[f]or misconduct defined in these Rules, and for good cause shown, and after notice and opportunity to be heard."

"The District Court has the inherent authority to set requirements for admission to its bar and to discipline attorneys who appear before it." In re Surrick, 338 F.3d 224, 229 (3d Cir. 2003). The Third Circuit has cautioned that, "[d]ue to the vital societal interests at state, any doubt as to a Petitioner's fitness to practice in a federal court should be resolved in favor of the public." In re Mitchell, 901 F.2d 1179, 1189 (3d Cir. 1990) (internal citations omitted).

This Court has adopted the Pennsylvania Rules of Professional Conduct.  Local R. Civ. P. 83(IV)(B).  Under Pennsylvania law, "[t]he power of a court to disbar an attorney should be exercised with great caution, but there should be no hesitation in exercising it when it clearly appears that it is demanded for the protection of the public." Office of Disciplinary Counsel v. Knepp, 441 A.2d 1197, 1201 (Pa. 1982) (quoting Matter of Leopold, 366 A.2d 227, 231 (Pa. 1976)).  "Whenever an attorney is dishonest, that purpose [protection of the public] is served by disbarment." Office of Disciplinary Counsel v. Czmus, 889 A.2d 1197, 1203 (Pa. 2005) (quoting Office of Disciplinary Counsel v. Grigsby, 425 A.2d 730, 733 (Pa. 1981)). "[D]isbarment is appropriate in cases of recidivist misconduct." Grigsby, 425 A.2d 730, 733 (Pa. 1981).

**III. Discussion**

Stosic does not oppose the imposition of reciprocal discipline: suspension for a year and a day. We believe, however, that his additional transgressions warrant disbarment.

A. *Reciprocal Discipline*

The Pennsylvania Disciplinary Board explained that Stosic failed to represent his clients diligently and misrepresented that he carried malpractice insurance. It further explained that Stosic failed to understand that his transgressions were serious or to show any remorse. The Board thus determined that Stosic violated numerous Pennsylvania disciplinary rules and recommended suspension for a year and a day. The Supreme Court adopted that recommendation. Stosic does not oppose the imposition of reciprocal discipline. Because we agree that Stosic's state court misconduct warrants the discipline that Pennsylvania imposed, in more usual circumstances, we would recommend Stosic's suspension from our bar for a year and a day. Our decision to recommend his disbarment, however, moots the question of whether this Court should impose reciprocal discipline.

B. *Disbarment*

We believe that misconduct evinced at the November 10 hearing—Stosic's failure to inform his client or Judge Bartle of his suspension; his misrepresentations to the Disciplinary Board; and his grossly inappropriate behavior—warrant his disbarment.

*Failure to Disclose Suspension*

Stosic's failure to disclose his suspension when he represented Sanchez before Judge Bartle is extremely serious. Stosic's explanation—that disclosure was not required because the suspension had not yet taken effect in this Court—is outrageous. His client was entitled to know before going to trial on grave criminal charges that his lawyer had been suspended in

Pennsylvania and was days away from suspension here.  It had not even occurred to Stosic that Sanchez would have been unrepresented if his trial had lasted three days longer.  Stosic's flippant suggestion that Judge Bartle should have known of the suspension because the September 21, 2016 Order to Show Cause was signed by Chief Judge Tucker is offensive and makes no sense.  Stosic's failure to disclose his suspension compelled the grant of a new trial.  Stosic's misconduct was thus "prejudicial to the administration of justice."  Pa. R.P.C. 8.4(d).  Such misconduct can itself warrant disbarment.  See In re Koehler, 521 F. App'x 615, 616 (9th Cir. 2013) (attorney disbarred for providing "legal advice, strategy, and recommendations" to clients while under state suspension); ABA Standards for Imposing Lawyer Sanctions § 6.11 (1992) ("Disbarment is generally appropriate when a lawyer, with the intent to deceive the court . . . improperly withholds material information [and] causes a significant or potentially significant adverse effect on the legal proceeding"); In re Mitchell, 901 F.2d 1179, 1184 (3d Cir. 1990) (ABA standard is a "model for determining the appropriate sanctions for lawyer misconduct").

*Misrepresentation*

We have discredited Stosic's testimony that he told opposing counsel and his clients of his suspension.  Even if he had told them, however, his certification to the Disciplinary Board remains untrue.  Stosic averred, *inter alia*, that he had informed opposing counsel and his clients of his suspension in writing by means allowing for proof of receipt.  Stosic admitted to us that he did not provide such notice.  Moreover, contrary to his certification that he had fully complied with Rule 217, he admitted to us that he had failed to withdraw from all pending matters.

The record thus confirms that Stosic contravened the Supreme Court's order that he comply with Rule 217, and falsely swore to the Disciplinary Board that he had complied.

According to his own testimony, Stosic failed to comply with several of these requirements; according to our credibility findings, he complied with virtually none of them. This was unprofessional conduct. See Pa. R.P.C. 3.3(a)(1) (prohibiting false statements of fact to tribunal), Id. 3.3(d) (requiring attorney to inform tribunal of all material facts during ex parte proceeding); Id. 8.4(c) (prohibiting conduct involving "dishonesty, fraud, deceit, or misrepresentation"); Pa. R.D.E. 217(e) (requiring attorney to certify compliance with Rule 217).

These additional violations of Rule 217 and the Rules of Professional Conduct also warrant disbarment. See Office of Disciplinary Counsel v. Wrona, 908 A.2d 1281, 1284, 1289 (Pa. 2006) (attorney disbarred for false statements to the tribunal and false accusations against the presiding judge); Czmus, 889 A.2d at 1204 (attorney disbarred for verifying false statements in bar application); In re Perrone, 777 A.2d 413, 415 (Pa. 2001) (attorney disbarred for filing false and misleading fee petitions); Office of Disciplinary Counsel v. Duffield, 644 A.2d 1186, 1192 (Pa. 1994) (attorney disbarred for making false statements to Disciplinary Counsel during investigation where attorney previously had substantial disciplinary record); Office of Disciplinary Counsel v. Holston, 619 A.2d 1054, 1056 (Pa. 1993) (attorney disbarred for "forging a court document" and "lying to the court"); Grigsby, 425 A.2d at 732-33 (attorney disbarred for filing sworn pleadings he knew to be false); see also ABA Standards for Imposing Lawyer Sanctions § 8.1 ("Disbarment is generally appropriate when a lawyer . . . knowingly violates the terms of a prior disciplinary order and such violation causes injury or potential injury to . . . the legal system.").

*Conduct Before Us*

As we have noted, the Board was troubled by Stosic's attitude during his disciplinary proceedings. (Office of Disciplinary Counsel v. Stosic, No. 65 DB 2015, ¶ 120.) His

deportment during the November 10 hearing was worse.  It would be an understatement to suggest that Stosic failed to appreciate the seriousness of the allegations against him, or the purpose of the hearing itself.  In seeking to justify his transgressions, Stosic necessarily showed no remorse.  Indeed, Stosic seemed to view us and our disciplinary process with contempt.  This complete refusal to acknowledge his professional obligations and transgressions, combined with his untruthful testimony, further convinces us that Stosic should not be practicing before this Court.  See Pa. R.P.C. 3.3(a)(1) (prohibiting false statements of fact to tribunal), Id. 8.4(c) (prohibiting conduct involving "dishonesty, fraud, deceit, or misrepresentation"); Id. 8.4(d) (prohibiting conduct "prejudicial to the administration of justice").

**IV. Discipline**

Once again, Stosic does not oppose the imposition of reciprocal discipline.  We are greatly troubled by Stosic's repeated failure to represent his clients diligently, and so would not hesitate to recommend a reciprocal year and a day suspension.  Unfortunately, the record before us demonstrates far more serious misconduct.  We held the November 10 hearing to give Stosic the "opportunity to be heard" as to whether his actions before Judge Bartle warranted the imposition of discipline greater than suspension for a year and a day.  Local R. Civ. P. 83.6(IV)(A); In re Ruffalo, 390 U.S. 544, 550 (1968).  When it became apparent during the hearing that Stosic had made misrepresentations to the Disciplinary Board respecting his compliance with Rule 217, we gave him another opportunity to be heard on that misconduct.  It is perhaps unsurprising that Stosic did not seek to contest this most serious allegation.  He appears to view the practice of law and compliance with its attendant obligations as a game, not to be taken seriously.

Stosic informed us that he deemed the discipline Pennsylvania imposed "as a blessing." (Doc. No. 4, ¶ 9.)  During that suspension, he intends to get a computer science degree and become a patent lawyer.  (Hr'g Tr. at 61:22-62:11.)  We express no view on Stosic's suitability for the patent bar.  Because he has demonstrated that he is dishonest, incompetent, smug, and incapable of adhering to professional standards, however, we believe that he is unfit to appear before us.  Accordingly, we recommend his disbarment.

## RECOMMENDATION

We recommend that the Court disbar Respondent Michael Elias Stosic from the bar of this Court.

John R. Padova, J.

Paul S. Diamond, J.

Juan R. Sánchez, J.

Copies mailed to M. Stosic 1.30.17